UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RAMON GUEVARA,<br><br>          Plaintiff,<br><br>     vs.<br><br>MARRIOTT HOTEL SVCS. INC.,<br><br>          Defendant. | Case No: C 10-5347 SBA<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Docket 29 |

    This is an employment discrimination action brought by Plaintiff Ramon Guevara ("Plaintiff"). The operative complaint alleges a hostile work environment based on racial harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), against Defendant Marriott Hotel Services, Inc. ("Marriott"). The parties are presently before the Court on Marriott's motion to dismiss the third amended complaint ("TAC") under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 29. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Marriott's motion to dismiss, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.     BACKGROUND**

    **A.     Factual Background**

    Plaintiff is a Hispanic male. TAC ¶ 1, Dkt. 28. He was hired by Marriott on August 22, 1989. Id. ¶ 10. In September 2002, Plaintiff became a union shop steward. Id. ¶ 17. In

this capacity, he "successfully handled hundreds of union members' complaints despite receiving no cooperation from . . . management." Id. Plaintiff alleges that his race and union activity resulted in tension with management. Id. ¶ 18. He further alleges that he "continually felt that management, who were all predominantly Caucasian, looked down on [him] due to his race and continually made verbally disparaging remarks directly to him or his union employees in front of him solely based on their Hispanic origin and did not ever treat [him] or the union employees that he represented as a shop steward as equals," which was done "as a means to control and undermine Plaintiff's effectiveness as a bilingual Mexican shop steward and . . . created a work environment [that] was severely detrimental to [him]." Id. During his employment with Marriott, Plaintiff alleges that he "almost always felt that there was a racial tension between him and management and that they resented the fact that he was bilingual and was able to communicate with his union employees and learn of their grievances against the hotel and its white management staff." Id.

According to Plaintiff, this action arises out of the severe and continuous racial harassment he experienced during his employment with Marriott, his illegal and wrongful termination on or about September 26, 2008, and the continued racial harassment he experienced during the arbitration proceedings following his termination. TAC ¶ 9. As set forth below, the TAC identifies a number of incidents that occurred during Plaintiff's employment with Marriott from late 2003/early 2004 to September 2008 which Plaintiff claims contributed to a racially hostile work environment. See TAC ¶¶ 19-30. Plaintiff claims that "management" subjected him to "a continuing pattern of verbal and physical abuse . . . to oust [him] from his position . . . because of his union involvement." Id. ¶ 43. He further claims that his "ousting was primarily based on racial harassment which lead to the ongoing and hostile work environment that [he] was subject to until his wrongful termination in 2008." Id.

On or about September 26, 2008, Plaintiff was terminated for violating Marriott's Harassment and Professional Conduct Policy. TAC ¶ 31. Specifically, Plaintiff was

terminated for restraining a manager at a meeting and leaving work early on or about September 20, 2008. See id. ¶¶ 30-31. Following his termination, Plaintiff challenged his discharge through Marriott's grievance procedures, which included arbitration hearings held on June 16, 2009 and July 16, 2009. Id. ¶ 33. On October 5, 2009, the arbitrator issued a decision upholding Plaintiff's termination. Id. ¶ 9. According to Plaintiff, his termination was upheld as a result of the false testimony of Marriott employees at the arbitration hearings concerning the incident giving rise to his termination. See id. ¶¶ 9, 33-35, 37-42. Specifically, Plaintiff alleges that he was "subjected to verbal conduct that was based on his race [during the arbitration hearing] as several white management employees testified falsely against [him]" about his conduct on September 20, 2008 and his conduct on a previous day regarding a training meeting. See id. ¶¶ 33, 37. Plaintiff's appeal of the arbitrator's decision was subsequently "denied." Id. ¶ 9.

### B. Procedural Background

On or about "early April 2010," Plaintiff allegedly filed an administrative charge of discrimination with the U.S. Equal Employment Opportunity Commission. TAC ¶ 7. On September 27, 2010, Plaintiff, proceeding pro se, commenced the instant action in the Superior Court of California, County of San Francisco, against Marriott for wrongful termination. Compl., Dkt. 1. On November 24, 2010, Marriott removed the action to this Court on the basis of federal question and diversity jurisdiction. Notice of Removal, Dkt. 1. On March 7, 2011, this Court issued an Order granting Marriott's unopposed motion to dismiss pursuant to Rule 41 of the Federal Rules of Civil Procedure. Dkt. 14.

On February 11, 2011, prior to the entry of the Order dismissing this action, and after receiving his Equal Employment Opportunity Commission ("EEOC") right-to-sue letter, Plaintiff filed a second pro se action in this Court under Title VII alleging discrimination and retaliation based on his race and union activity. See Case No. C 11-0647, Dkt. 1. Although unclear, Plaintiff's complaint also appeared to allege a Title VII hostile work environment claim based on racial harassment. Id.

On April 16, 2011, Marriott filed a motion to dismiss the second action. See Case No. C 11-0647, Dkt. 19. On August 4, 2011, this Court issued an Order granting in part and denying in part Marriott's motion to dismiss the second action. See Case No. C 11-0647, Dkt. 33. In that Order, the Court directed the Clerk to reopen the instant case and to remove the complaint from the second action and refile it in this case as an amended complaint. Id. The Court also directed Plaintiff to file a second amended complaint ("SAC") in the instant case. Id. The second action was dismissed with prejudice as filed in error. Id.

On August 29, 2011, Plaintiff, proceeding with counsel, filed a SAC, which alleges one claim for relief against Marriott for hostile work environment based on racial harassment in violation of Title VII. See SAC. On September 17, 2012, the Court dismissed the SAC for lack of subject matter and for failure to state a claim. Dkt. 26. On October 9, 2012, Plaintiff filed a TAC. Dkt. 28. Marriott filed a motion to dismiss the TAC on October 26, 2012. Dkt. 29. On November 16, 2012, Plaintiff filed an opposition. Dkt. 33. A reply was filed on November 23, 2012. Dkt. 34.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and have power to hear only those cases authorized by the Constitution and statutes enacted by Congress. Couch v. Telescope Inc., 611 F.3d 629, 632 (9th Cir. 2010). "[D]ismissal is the appropriate disposition if subject matter jurisdiction is absent." Demarest v. United States, 718 F.2d 964, 965 (9th Cir. 1983).

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). In a "facial" challenge, the court assumes the truth of plaintiff's factual allegations and draws all reasonable inferences in its favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). In the case

of a "speaking" motion, the court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Rattlesnake Coalition v. United States Envtl. Protection Agency, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

### B.     Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b) (6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim on which relief may be granted, the Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." Daniels–Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Sciences Securities Litigation, 536 F.3d 1049, 1055 (9th Cir. 2008).

The complaint is properly dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the

opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-1088 (9th Cir. 2002); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (if a court dismisses the complaint, it should grant leave to amend, unless it determines that the pleading could not possibly be cured by the allegation of other facts).

### III. DISCUSSION

#### A. Request for Judicial Notice

In connection with its motion to dismiss, Marriott requests the Court take judicial notice of: (1) Plaintiff's Equal Employment Opportunity Commission Intake Questionnaire, dated September 3, 2010; and (2) Plaintiff's EEOC Charge off Discrimination, dated October 20, 2010. Marriott's Request for Judicial Notice ("RJN") Nos. 1-2, Dkt. 29-1. Plaintiff did not file an opposition to Marriott's RJN.

Under Rule 201 of the Federal Rules of Evidence, this Court may take judicial notice of certain facts that "are not subject to reasonable dispute." A fact is not subject to reasonable dispute if it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201. A court may take judicial notice of public records, including records and reports of administrative bodies. See United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003); see also Cunningham v. Litton Indus., 413 F.2d 887, 889 n. 2 (9th Cir. 1969) (taking judicial notice of EEOC decision). Accordingly, Marriott's unopposed RJN is GRANTED.

#### B. Motion to Dismiss

##### 1. Exhaustion of Administrative Remedies

Marriott contends that dismissal of the TAC is appropriate because Plaintiff failed to exhaust his administrative remedies by filing a timely administrative charge with the

- 6 -

EEOC.  Def.'s Mtn. at 4-10.  "To establish subject matter jurisdiction over a Title VII claim, [plaintiff] must have exhausted his administrative remedies by filing a timely charge with the EEOC."  See Vasquez v. County of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003). Timely exhaustion of administrative remedies is a statutory prerequisite to filing suit under Title VII.  See Sommatino v. United States, 255 F.3d 704, 707-708 (9th Cir. 2001) (affirming district court's dismissal of Title VII claims for lack of jurisdiction).

To timely exhaust administrative remedies, a plaintiff must file a charge with the EEOC within 180 days from the last act of alleged discrimination, unless the complainant initially institutes proceedings with a state or local agency, in which case the EEOC charge must be filed within 300 days of the last discriminatory act, or within 30 days of receiving notice that the state or local agency has terminated proceedings, whichever is earlier.  42 U.S.C. § 2000e–5(e)(1); see MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081-1082 (9th Cir. 2006).  "A claim is time barred if it is not filed within these time limits." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).

Here, the last discriminatory act alleged by Plaintiff occurred on October 5, 2009 when the arbitrator issued a decision upholding Plaintiff's termination.  See TAC ¶¶ 7, 9, 35.  According to Plaintiff, he timely exhausted his administrative remedies by filing an administrative charge within 180 days of the arbitrator's decision "[o]n or about early April 2010."[1]  Id. ¶ 7.  However, because the arbitrator is not an employee of Marriott, Plaintiff cannot hold Marriott responsible for any conduct undertaken by the arbitrator.  See Eisenberg v. Permanente Medical Group, 855 F.Supp.2d 1002, 1015-1016 (N.D. Cal. 2012) (Hamilton, J.) (holding that plaintiff failed to establish religious discrimination on the basis that a private neutral failed to accommodate his need to reschedule a Fair Hearing due to plaintiff's requested need to be home on the Sabbath).  Thus, the last discriminatory act alleged by Plaintiff occurred on July 16, 2009, when "Marriott management" testified falsely against him during the second arbitration hearing.  See TAC ¶¶ 7, 9, 33, 37.  Given

---

[1] Plaintiff does not contend that the 300-day limitations period applies.

that 259 days elapsed from July 16, 2009 to April 1, 2010, Plaintiff failed to timely exhaust his administrative remedies.

Moreover, even assuming for the sake of argument that the last discriminatory act occurred on October 5, 2009 as Plaintiff alleges, Plaintiff did not file a timely administrative charge with the EEOC. Plaintiff filed his intake questionnaire with the EEOC on September 3, 2010 and filed his administrative charge with the EEOC on or after October 20, 2010.[2] Marriott's RJN Nos. 1-2. Both of these filings occurred well over 180 days after October 5, 2009.[3] Plaintiff argues, without elaboration, that while the "EEOC only received the charge in September 2010 . . . he first addressed his charge much earlier." Pl.'s Opp. at 6. According to Plaintiff, he filed his administrative charge in "early April 2010." TAC ¶ 7. However, because this allegation is contradicted by judicially noticed documents, see Marriott's RJN Nos. 1-2, the Court does not accept Plaintiff's conclusory assertion that he filed his administrative charge in "early April 2010."[4] See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (the court need not accept as true allegations that contradict facts which may be judicially noticed by the court); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-1296 (9th Cir. 1998) (court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint).

---

[2] Plaintiff's intake questionnaire is stamped received by the EEOC on September 3, 2010. Marriott's RJN No. 1. Plaintiff's administrative charge is dated October 20, 2010, but does not does not contain a stamp indicating when it was received by the EEOC. Marriott's RJN No. 2. Thus, Plaintiff filed his administrative charge on or after October 20, 2010.

[3] The intake questionnaire was filed with the EEOC 333 days after October 5, 2009, while Plaintiff's administrative charge was filed with the EEOC at least 380 days after October 5, 2009.

[4] In direct violation of the Court's September 17, 2012 Order, Plaintiff failed to allege the specific date in April 2010 that he filed his administrative charge with the EEOC. See Dkt. 26. Plaintiff has not pled any facts or attached documentation to the TAC supporting his claim that he filed his administrative charge in "early April 2010." Indeed, Plaintiff concedes that "it was not until September 2010 that the EEOC actually received plaintiff's claims and began evaluating [them]." Pl.'s Opp. at 6.

Accordingly, even assuming that Plaintiff's submission of an intake questionnaire to the EEOC constitutes the filing of an administrative charge,[5] it was untimely because it was submitted more than 180 days after the last discriminatory act alleged by Plaintiff. Plaintiff's hostile work environment claim is therefore time-barred, unless he establishes that the filing of his administrative charge is subject to waiver, estoppel, and/or equitable tolling. Johnson v. Lucent Techs. Inc., 653 F.3d 1000, 1008 (9th Cir. 2011) ("Filing a timely charge of discrimination with the EEOC is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

In the Court's September 17, 2012 Order dismissing the SAC, the Court granted Plaintiff leave to allege facts establishing the applicability of the doctrines of waiver, estoppel, and/or equitable tolling. The TAC, however, does not allege facts which invoke any of these doctrines. Nor does Plaintiff argue in his opposition that any of these doctrines apply. Instead, Plaintiff suggests, without citation to authority, that the applicable limitations period should be tolled because he has only had the assistance of counsel "since defendant filed its first motion to dismiss." Pl.'s Opp. at 5. The Court rejects Plaintiff's suggestion.

The doctrine of equitable tolling is to be applied sparingly. Morgan, 536 U.S. at 113. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pac. Bell, 202 F.3d 1170, 1178 (9th Cir. 2000). Equitable tolling "focuses on whether there was excusable delay by the plaintiff." Id. A pro se plaintiff's failure to act diligently is not a reason to invoke equitable tolling. See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151-152 (1984) (per curiam) (pro se filing of the "right to sue letter" rather than the complaint did not toll the 90-day period; noting that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out

---

[5] See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 395-404 (2008) (discussing approach to be used in determining whether intake questionnaire constitutes "a charge").

- 9 -

of a vague sympathy for particular litigants."); see also Payan v. Aramark Management Services Ltd. Partnership, 495 F.3d 1119, 1127 (9th Cir. 2007) (district court properly dismissed pro se plaintiff's Title VII claims as untimely when complaint was filed three days beyond the 90-day period because plaintiff's "pro se status does not afford her different treatment under these standards").

In sum, because Plaintiff has failed to timely exhaust his administrative remedies and has not alleged facts establishing a basis to invoke the doctrine of waiver, equitable estoppel, or equitable tolling, Marriott's motion to dismiss is GRANTED.[6] Because the Court has already afforded Plaintiff the opportunity to amend his complaint to allege facts demonstrating that he timely exhausted his administrative remedies and he has failed to do so, Plaintiff's hostile work environment claim is DISMISSED without leave to amend. Plaintiff has failed to identify any facts that would suggest he can amend the TAC to state a cognizable hostile work environment claim. As such, it appears that further amendment would be futile.

### 2. Hostile Work Environment Claim

Marriott contends that even if all of the allegations in the TAC are considered for purposes of determining liability, Plaintiff has failed to state a hostile work environment claim based on racial harassment. See Def.'s Mtn. at 11-15. The Court agrees.

In order to establish a prima facie claim of hostile work environment under Title VII, Plaintiff must establish that (1) he was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. Manatt v. Bank of America, 339 F.3d 792, 798 (9th Cir. 2003);[7] Vasquez, 349 F.3d at 642.

---

[6] In light of the Court's determination that Plaintiff has failed to timely exhaust his administrative remedies, the Court will not reach the merits of Marriott's alternative argument in support of dismissing Plaintiff's hostile work environment for lack of subject matter jurisdiction.

[7] Hostile work environment claims under Title VII contain the same elements as a § 1981 hostile work environment claim and, thus, the "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." Manatt, 339 F.3d at 797.

In order to satisfy the third element of this test, a plaintiff must show that his work environment was both subjectively and objectively hostile. Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005). In making the objective determination, a court must look to all of the circumstances, including the frequency, severity, and nature (i.e., physically threatening or humiliating as opposed to merely verbally offensive) of the conduct. Id. The required severity of the conduct varies inversely with its pervasiveness and frequency. Id. The objective hostility of the environment must be considered from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff. Id.

Plaintiff identifies a number of incidents in the TAC that occurred during his employment with Marriott from late 2003/early 2004 to September 2008 which he claims created a hostile work environment based on racial harassment. See TAC ¶¶ 19-30. Plaintiff also alleges that he was subjected to verbal conduct based on race at the arbitration hearings following his termination when "Marriott management" provided false and misleading testimony regarding the events surrounding his termination. See id. ¶¶ 7, 9, 31-42

Having reviewed the allegations in the TAC, the Court finds that Plaintiff has failed to correct the deficiencies identified by the Court in its September 17, 2012 Order dismissing the SAC. The TAC, like the SAC, does not allege facts establishing a prima facie claim of hostile work environment under Title VII based on racial harassment. Plaintiff has not alleged facts demonstrating that he was subjected to any verbal or physical acts because of his race. The allegations in the TAC do not establish that any of the alleged discriminatory conduct was motivated by discriminatory animus because of Plaintiff's race.

While Plaintiff asserts that he "continually felt that management, who were all predominantly Caucasian, looked down on [him] due to his race and continually made verbally disparaging remarks directly to him or his union employees in front of him solely based on their Mexican origin and did not ever treat Plaintiff or the union employees that he represented as a shop steward as equals," TAC ¶ 18, the TAC does not identify any specific examples of "verbally disparaging" race-related remarks that he was subjected to. See

Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002) ("Generally, a plaintiff alleging racial or national origin harassment would present facts showing that he was subjected to racial epithets in the workplace."). The TAC does not allege that Plaintiff was harassed by racial epithets, jokes or comments. Instead, the TAC contains vague and conclusory allegations that Plaintiff was harassed because of his race. For example, Plaintiff alleges that he "felt" as though he was discriminated against by "white management," and that he believes that certain conduct he was subjected to was racially motivated, based on race, or "based upon continuing efforts to discriminate against him." See, e.g., TAC ¶¶ 18, 20-21, 23, 28, 35. Having reviewed the allegations in the TAC, the Court concludes that Plaintiff has not alleged facts showing that he was subjected to verbal or physical conduct because of his race. The TAC is devoid of facts establishing that the hostility about which Plaintiff complains is directly related to his race.

Furthermore, the allegations in the TAC do not demonstrate that the conduct Plaintiff was allegedly subjected to was sufficiently severe or pervasive to establish an actionable hostile work environment claim. See Vasquez, 349 F.3d at 642-644 (describing nature of severity and pervasiveness needed for hostile work environment claim). The incidents Plaintiff relies upon to state a hostile work environment claim are isolated, sporadic events that took place over several years. They are not the type of frequent, unwelcome verbal or physical acts that have been found to alter the conditions of employment and create an abusive work environment. Consequently, the incidents pointed to by Plaintiff are not sufficiently severe or pervasive to state an actionable hostile work environment claim based on racial harassment.

In Nichols v. Azteca Restaurant Enters., Inc., 256 F.3d 864 (9th Cir. 2001), the Ninth Circuit held that the plaintiff was subjected to an objectively hostile work environment where he was subjected to an "unrelenting barrage of verbal abuse. . . ." Id. at 872. There, Plaintiff's co-workers and supervisor referred to him in Spanish and English as "she" and "her" and mocked him for carrying his serving tray "like a woman." Id. He also was subjected to name-calling in both English and Spanish with epithets such as "faggot"

and "fucking female whore." Id. at 870. This abuse occurred at least once a week and often several times a day. Id. Based on the record presented, the court held that the conduct directed at Plaintiff was designed to humiliate and anger him, and was sufficiently severe and pervasive to alter the terms and conditions of his employment. Id. at 873.

Here, the TAC alleges that Plaintiff was subjected to the following discriminatory conduct: in late/2003/early 2004, a Marriott manager, under the direction and guidance of Human Resources, "attempt[ed]" to discriminate against Plaintiff "based upon him being Mexican" by participating in the promotion and circulation of a petition to remove Plaintiff as a shop steward in violation of an established NLRB practice; in May 2006, grievances filed by Plaintiff on behalf of himself and other union employees concerning "verbal and physical conduct that was of a racial nature" were "met with distain by the White management" and "with racial conduct . . . in that [Plaintiff] believed he was not being taken seriously and that management made it seem that it was the minorities who were complaining unjustifiably because of their race including plaintiff himself"; in or about May 2006, Marriott attempted to terminate Plaintiff by unfairly accusing him of multiple violations of the Conduct and Harassment policy;[8] in the fall of 2006, a white "banquets" manager "verbally assaulted a[] Latino employee as well as Plaintiff when he screamed in their faces and ordered the employee . . . to 'Tell them I didn't lie, Tell Them!' "; in July 2007, "Plaintiff was physically threatened with abuse and racially discriminated against by

---

[8] Plaintiff asserts that he was ultimately given a warning for his "multiple violations of the Conduct and Harassment policy," which he contends was introduced as evidence at the arbitration hearing in direct violation of the collective bargaining agreement "based upon [management's] desire to rid the Marriot of this Mexican Shop Steward who was not afraid to give his opinions to management." SAC ¶ 22.

Chef Rick who made physical threats of violence against Plaintiff based on his race";[9] in August 2008, Marriott's Human Resources department denied Plaintiff the opportunity to translate for a worker; on or about September 20, 2008, "Plaintiff was physically abused by [Marriott's] restaurant manager . . . who bumped plaintiff in the stomach";[10] on September 26, 2008, Plaintiff was terminated after being wrongfully accused of restraining a Marriott manager and leaving work early; in June and July 2009, Marriott employees made false and misleading statements regarding the incident giving rise to his termination and presented false and misleading evidence during the arbitration proceedings.  See TAC ¶¶ 19-23, 26, 28-31, 33, 37.

Under the totality of the circumstances, the Court concludes that the incidents alleged in the TAC do not demonstrate that an objectively hostile work environment based on race existed.  The largely vague and conclusory allegations in the TAC are insufficient to establish that Plaintiff was subject to conduct that was severe or pervasive enough to alter the conditions of his employment and create an abusive work environment.  The Ninth Circuit has rejected hostile work environment claims involving circumstances far more severe and pervasive than those at issue here.  See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1031, 1037 (9th Cir. 1990) (affirming conclusion that plaintiffs failed to prove a hostile work environment even where the employer allegedly made racially offensive slurs,

---

[9] Plaintiff alleges that Chef Rick's boss was present during the incident and did nothing to stop the escalation of Chef Rick's threats.  TAC ¶ 26.  Plaintiff filed a grievance but "management staff Julie Fallon" failed to conduct a thorough investigation because of their "racial dislike of the Plaintiff."  Id.  Plaintiff contends that management allowed Chef Rick to work the day after the incident "in order to further intimidate him in his work environment."  Id. ¶ 27.  After he complained to management, Chef Rick was "merely" moved downstairs even though Plaintiff believed he was a threat to his safety.  Id.  According to Plaintiff, Chef Rick was eventually transferred, which "shows disparaging treatment of White employees versus Mexican employees such as the Plaintiff who . . . was fired for conduct that he did not commit and for conduct that was not nearly as severe as this incident."  Id.  The Court notes that the TAC does not identify the "physical threats" of violence made by Chef Rick or allege any facts suggesting that Chef Rick's conduct was motivated by discriminatory animus because of Plaintiff's race.  Indeed, the TAC does not describe in any detail the incident between Chef Rick and Plaintiff.

[10] The TAC does not provide any factual details regarding this incident.  Plaintiff alleges that he filed a grievance, but the white manager was not disciplined.  TAC ¶ 29.

kept illegal personnel files on the plaintiffs because they were Latinos, provided unsafe vehicles to Latino police officers, posted a racially offensive cartoon, targeted Latinos when enforcing rules, and did not provide adequate back-up to Latino police officers); Vasquez, 349 F.3d at 643-644 (finding no hostile environment even where plaintiff was told that he should consider transferring to work in the field because "Hispanics do good in the field," was told that he had "a typical Hispanic macho attitude," a co-worker made continual, false complaints about the plaintiff to his supervisor, and plaintiff was yelled at in front of others); Manatt, 339 F.3d at 798 (finding that jokes using the phrase "China man," ridiculing for mispronunciation of names, and employees pulling their eyes back with their fingers to mock the appearance of Asians did not constitute a hostile work environment for a Chinese woman).

Accordingly, because Plaintiff has failed to allege facts demonstrating that he was subjected to verbal or physical conduct because of his race that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment, Marriott's motion to dismiss is GRANTED. Because the Court has already afforded Plaintiff the opportunity to amend to allege facts stating a hostile work environment claim and he has failed to do so, Plaintiff's hostile work environment claim is DISMISSED without leave to amend. Plaintiff has failed to identify any facts that would suggest that he can amend the TAC to state a cognizable hostile work environment claim. As such, it appears that further amendment would be futile.

**C.     Request for Leave to Amend**

Plaintiff requests leave to amend the TAC to allege facts stating a cognizable hostile work environment claim and to add "Non-Title VII claims" for wrongful termination. Pl.'s Opp. at 12. As discussed above, the Court finds that granting Plaintiff leave to amend with respect to his hostile work environment claim is not appropriate. Further, the Court finds that Plaintiff has failed to demonstrate that granting leave to amend to add "Non-Title VII claims" for wrongful termination is appropriate. Plaintiff has not offered a satisfactory explanation for why he waited so long to seek leave to add such claims. On August 4,

2011, the Court issued an Order dismissing Plaintiffs' non-Title VII claims. Dkt. 15. The Order states that if Plaintiff wishes to add any non-Title VII claims to his SAC, he must file a motion requesting leave to do so within thirty days of the Order. Id. Plaintiff failed to do so.

Accordingly, because the Court has already provided Plaintiff an opportunity to allege the claims he seeks to add in a fourth amended complaint, and because Plaintiff has failed to explain his lengthy delay in seeking to add these claims, Plaintiffs' request for leave to amend is DENIED. The Court, however, will afford Plaintiff the opportunity to file a motion for leave to file a fourth amended complaint.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Marriott's motion to dismiss is GRANTED. Plaintiff's Title VII hostile work environment claim is DISMISSED with prejudice. Plaintiff may file a motion for leave to file a fourth amended complaint within twenty-one (21) days from the date this Order is filed. The proposed fourth amended complaint shall only allege non-Title VII claims for wrongful termination that Plaintiff may assert in good faith and consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure. Plaintiff is warned that the failure to timely file such a motion will result in dismissal of this action. Marriott shall notify the Court if Plaintiff fails to timely file a motion for leave to file a fourth amended complaint.

2. This Order terminates Docket 29.

IT IS SO ORDERED.

Dated:                                      _____
                                            SAUNDRA BROWN ARMSTRONG
                                            United States District Judge